UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAJUANA A. REID,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF OAKLAND, et al.,<br><br>        Defendants. | Case No. 25-cv-00383-JST<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>Re: ECF No. 30, 36 |

Before the Court is Defendant City of Oakland's[1] motion to dismiss and Plaintiff LaJuana A. Reid's motion for leave to file a third amended complaint. ECF Nos. 30, 36. The Court will grant both motions.[2]

I.  **BACKGROUND**[3]

The complaint in this case focuses on two distinct time periods. The first begins in 1999, when Reid alleges that she experienced "organized gang stalking," by an individual named Patrick Wirth, against whom she obtained a restraining order. ECF No. 11 ¶¶ 14, 323. Between 1999 and 2003, Reid had her car repeatedly vandalized, was frequently followed, and had poison thrown at

---

[1] Defendants are the City of Oakland; the Oakland Police Department; the Estate of Moses Jacko Jr.; and the following members of the Oakland Police Department, all sued in their official capacities—John Jacko Romero; Janey Lorraine Meeks-Hay; Victoria Lynn Denardi; Mark Woodrow Wilson; Christopher Kelley; Binh Tran; Kito Yslava; Omar Ashford; Gordon Dorham; Zelunette Mckellar; Chablis Delove; Karlana Ingram; Samantha Michelle Taylor; and Rodney Woodson. ECF No. 11 ¶¶ 48–65.

[2] Reid has also filed a motion for leave to amend that appears to seek to add an "Exhibit 40" to her operative complaint. ECF No. 45. The Court has reviewed the exhibit and considered it in this order.

[3] For purposes of this motion to dismiss, the Court accepts as true the following allegations from the second amended complaint, ECF No. 11. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

her face. *Id.* ¶ 15. She alleges that despite reporting these incidents, the Oakland Police Department refused to investigate or intervene. *Id.* She claims that the "pattern of harassment and surveillance [she] experienced since 1999 laid the groundwork for" the events of 2019. *Id.* ¶ 17.

The heart of the complaint deals with alleged events taking place between August 2, 2019 and October 1, 2019, leading up to what Reid labels a staged administrative kidnapping by Oakland police officers. On or about August 2, 2019, Reid reported the illegal cannabis cultivation of a neighboring property at 7833 Lockwood Street, operated by Moses Jacko Jr., to the City of Oakland Code Enforcement. ECF No. 11 ¶ 73. On August 4, Officers Victoria Denardi and Mark Wilson "conducted what appeared to be an informant debriefing disguised as a response to a false burglar alarm" and "visited 7833 Lockwood Street claiming to respond to a 933R (Suspicious Circumstances) call." *Id.* ¶ 74. On August 8 and August 12, Reid filed additional Code Enforcement complaints regarding physical obstructions on the 7833 Lockwood Street property as well as "ongoing neighborhood harassment issues." *Id.* ¶¶ 78–79.

On August 15, Officer John Jacko Romero "fabricated an open-ended false Citizen's Crime Report" against Reid claiming that she was "causing a 415N disturbance and identified his cousin, Moses Jacko, as the victim," despite the incident allegedly never occurring. *Id.* ¶ 80. Romero then left the report open until September 17, 2019, to allow Moses Jacko "to make multiple false 911 calls" and build a "false paper trail aimed at justifying illegal actions against" Reid. *Id.* ¶¶ 82, 110. One 911 call involved Jacko alleging that Reid "had been yelling at him through her window while he was in his backyard, using profanities and accusing him of being a 'gang stalker,'" and which the dispatcher described as a "chronic issue." *Id.* ¶¶ 95–96. Another 911 call followed after Jacko "pulled up to [Reid's] house in his car and made direct threats, including, 'I'm going to get the last laugh, I promise you that,' and asked if [Reid] 'wanted to suffer.'" *Id.* ¶ 106.

On September 17, 2019, Romero "authored a fraudulent Elder Abuse Temporary Restraining Order" on behalf of Jacko Jr., which was issued by a "family court" and served by the Alameda County Sheriff on Reid on September 25, 2019. *Id.* ¶¶ 115–19. On September 27, 2019, the temporary restraining order was "entered into the CLETS system" and "provided the pretext

2

1   necessary for Romero and the Oakland Police Department to escalate their retaliatory actions
2   against" Reid.  *Id.* ¶ 120 (citation modified).

3   On the morning of October 1, 2019, Jacko Jr. called 911, "falsely claiming that [Reid] was
4   on her porch screaming at him."  *Id.* ¶ 121.  The dispatcher Defendant Zelunette McKellar asked
5   Jacko Jr. whether Reid was "mentally ill," to which Jacko Jr. replied in the affirmative and added
6   "That's why I'm taking her to court. Then I'm going to prove that she is."  *Id.*  McKellar then
7   documented Reid's address as a "5150 location,"[4] and the 5150 designation was broadcast
8   throughout the day to Oakland Police.  *Id.* ¶¶ 122–23.  That day, Officer Wilson arrived on the
9   scene of Reid's house and took her into custody at the Eastmont Mall along with Officers Carrillo
10  and Denardi, in what Reid calls a "deliberate effort to create a pretext for [Reid's] administrative
11  kidnapping."  *Id.* ¶¶ 124–25, 291–97.

12  Reid now asserts the following causes of action: (1) U.S.C. § 1983 for violations of the
13  First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; (2) 42 U.S.C. § 1983 for *Monell*
14  liability against the City of Oakland and DOES 1-50; (3) intentional infliction of emotional
15  distress; (4) false imprisonment; (5) malicious prosecution; (6) defamation; (7) civil conspiracy;
16  (8) violation of the California Bane Act; (9) violation of the Ralph Act; (10) negligent supervision
17  and retention; (11) failure to intervene; (12) trespass; (13) violation of Federal Kidnapping Act, 18
18  U.S.C. § 1201; (14) "violation of bodily Integrity and unlawful speech"; (15) filing and use of
19  false police reports; and (16) "allowing false 911 calls and coached false narratives."

20  **II.    JURISDICTION**
21  The Court has jurisdiction under 28 U.S.C. §§ 1331.

22  **III.   REQUEST FOR JUDICIAL NOTICE**
23  "As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling
24  on a Rule 12(b)(6) motion.'"  *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir.
25  2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  "When 'matters
26  outside the pleading are presented to and not excluded by the court,' the 12(b)(6) motion converts

---

[4] California Welfare and Institutions Code Section 5150 refers to the detention of persons with a mental health condition for evaluation and treatment for a period of up to 72 hours.

3

into a motion for summary judgment under Rule 56," unless those matters satisfy the "incorporation-by-reference doctrine" or the standard for "judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (quoting Fed. R. Civ. P. 12(d)). The Ninth Circuit has expressed concern with the practice of "exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* The Ninth Circuit also cautioned that "[i]f defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id.* at 999.

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute,'" i.e., the fact "is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)).

City of Oakland requests judicial notice of a government claim form submitted by Reid and dated May 29, 2024, regarding some of the allegations in this case. *See* ECF No. 31. Reid does not directly oppose the request for judicial notice but argues that the document should not be used to resolve disputed issues and should be rejected to the extent it mischaracterizes her compliance with presenting her claims to the City of Oakland. ECF No. 35 at 2. Reid also contends that the Court should take judicial notice of three of her own exhibits: (1) her revised application for leave to present a late claim, emailed to the City Attorney's Office on June 16, 2024; (2) the City of Oakland's formal denial of Reid's application, dated July 10, 2024; and (3) Reid's original claim form to the City of Oakland filed May 29, 2024. ECF No. 35 at 3.

Because courts routinely take judicial notice of government documents, and the claim form is not subject to reasonable dispute, the Court grants City of Oakland's request for judicial notice. *See Fayed v. Davis*, No. 21-CV-08206-JST, 2024 WL 4642883, at *5 (N.D. Cal. Oct. 30, 2024). For the same reason, the Court also grants Reid's request for judicial notice of three other documents.

/ / /

## IV. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072. And when a pro se plaintiff has filed a complaint, courts must "construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F. 3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 733 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc))

### B. Motion for Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court considers five factors in deciding a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended its complaint. *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir.

2013). The rule is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a court should determine whether to grant leave "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## V. MOTION TO DISMISS

### A. Time-Barred Claims

Reid's claims are time barred because they arise from the alleged "administrative kidnapping" and surrounding events that took place in September and October 2019, more than five years before Reid filed her complaint. As discussed below, the statute of limitations for each of her claims has passed for claims based on those events.

#### 1. Section 1983 Claims—Individual and *Monell* Liability

The statute of limitations for Section 1983 claims is borrowed from the state personal injury statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 240–41, 109 S. Ct. 573, 577 (1989). "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir.1999)). California's statute of limitations for personal injury claims is two years. *See* Cal. Civ. P. Code § 335.1; *Holt v. Cnty. of Orange*, 91 F.4th 1013, 1018 (9th Cir. 2024).

Accordingly, because Reid filed her initial complaint on January 10, 2025, ECF No. 1, her first and second causes of action based on Section 1983 are barred by the statute of limitations, as they arise from events prior to January 10, 2023.

6

### 2. Intentional Infliction of Emotional Distress

California's two-year statute of limitations for personal injury actions applies to claims of intentional infliction of emotional distress. *See* Cal. Civ. Proc. Code § 335.1; *see also Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 852–53 (2018) ("Intentional infliction of emotional distress has a two-year statute of limitations."). The statute of limitations for an intentional infliction of emotional distress claim begins to run "when the plaintiff suffers severe emotional distress as a result of outrageous conduct by the defendant." *Soliman v. CVS RX Servs., Inc.*, 570 Fed. App'x 710, 711 (9th Cir. 2014); *see also Wassmann*, 24 Cal. App. 5th at 853 ("A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant." (internal quotation omitted)).

Because Reid filed her complaint on January 10, 2025, ECF No. 1, her third claim for intentional infliction of emotional distress is barred by the statute of limitations, as it arises from events prior to January 10, 2023.

### 3. False Imprisonment and Defamation

Under California law, actions for false imprisonment and defamation (libel and slander) are subject to a one-year statute of limitations. *See* Cal. Civ. Proc. § 340(c). Although Reid does not identify a specific date to the statements giving rise to her alleged defamation claim, she appears to refer to events from the September through October 2019 time frame in which the police dispatchers referred to her with derogatory terms and labels. *See* ECF No. 11 ¶¶ 260–61. She does not allege any specific facts to support a defamation claim taking place after October 1, 2019.

### 4. Malicious Prosecution

Reid does not identify the basis under which she brings her malicious prosecution claim. *See generally* ECF No. 11 ¶¶ 251–55. She appears to be referring to the alleged "false reports" that were filed against her leading to her detention in October 2019. *See id.*

The statute of limitations for a malicious prosecution claim here is two years. *See Peinado v. City & Cnty. of San Francisco*, No. C-11-1799 EMC, 2013 WL 163473, at *3 (N.D.

7

Cal. Jan. 15, 2013). The claim begins to accrue upon the date of favorable termination. *Id.* Here, however, Reid has not alleged any favorable termination. Reid has thus failed to adequately state a claim, and to the extent that she relies upon the events of October 2019 as support of favorable termination, her claim is time barred.

### 5. Civil Conspiracy

Reid does not identify the statutory basis of her civil conspiracy claim. *See* ECF No. 11 ¶¶ 265–70. To the extent that she asserts a claim under Section 1983, it is time barred for the reasons outlined above, as Reid relies on allegations that Defendants conspired to violate her rights between 1999 and 2019—more than two years prior to the filing of her complaint.

### 6. California Bane Act and Ralph Act

For both Bane Act and Ralph Act claims, courts apply either a two-year statute of limitations for liability arising out of common law neglect or personal injury, as provided under Cal. Civ. Proc. Code § 335.1, or a three-year statute of limitations for statutory actions. *See Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 753–760 (2002); *see also Wilson v. City of Oakland*, No. C-11-05377 DMR, 2012 WL 669527, at *3 n.6 (N.D. Cal. Feb. 29, 2012).

As Reid's claims arise out of personal injury, a two-year statute of limitations applies. *See Mascorro v. City of San Diego*, 2023 WL 8115528, at *15 (S.D. Cal. Nov. 22, 2023) (holding Bane Act claims involving personal injury to have two-year statute of limitations under Cal. Civ. Proc. Code § 335.1)

### 7. Negligent Supervision and Retention and Failure to Intervene

Claims for injury resulting from negligent supervision are subject to a two-year statute of limitations under California law. *See* Cal. Civ. Proc. § 335.1.

Reid does not identify the statutory basis for her "failure to intervene" cause of action. *See* ECF No. 11 ¶¶ 290–97. Regardless, a two-year statute of limitations would apply under either 42 U.S.C. § 1983 or under general negligence, as both look to California Civil Procedure § 335.1. Because Reid's claims are based on events taking place in August-October 1999, her negligent supervision and failure to intervene claims are barred by the statute of limitations.

8

### 8. Trespass

Under California law, a three-year statute of limitations applies to claims for civil trespass. *See* Cal. Civ. Proc. § 338(b). Reid alleges trespass based on Defendant Wilson's entry to her property on October 1, 2019, so her claim is time barred.

### 9. Violation of Bodily Integrity and Unlawful Search

Reid labels her fourteenth cause of action as one for "Violation of Bodily Integrity and Unlawful Search" and alleges that Defendants "violated [her] Fourth Amendment rights through an unlawful search of [her] personal belongings and [her] person." ECF No. 11 ¶ 305. To the extent that Reid is stating a claim under Section 1983, it is time-barred for the same reasons discussed above. If Reid is not stating a claim under Section 1983, she has not otherwise provided sufficient detail as to her legal theory for liability to state a claim.

### B. Equitable Tolling

Because Reid filed her initial complaint on January 10, 2025, ECF No. 1, any claims based on events prior to January 10, 2023, are barred by the statute of limitations.

Reid argues that equitable tolling applies because of alleged obstruction in her investigation of the alleged scheme against her. ECF No. 34 at 11. Moreover, she argues that the continuing violation doctrine applies because of the violations she has suffered beginning in 1998 as part of a continuous scheme against her. *Id.* (citing SAC ¶¶ 14–17).

Defendants argue that Reid has not satisfied the high bar of "extraordinary circumstances" to justify the application of equitable tolling. ECF No. 39 at 4 (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)). They further argue that the "continuing violation doctrine may not apply to discrete acts like the 2019 kidnapping," which "typically covers ongoing policies," and that Reid's claim of a continuum from 1998 to 2019 is "too broad to link disparate events under a single violation." *Id.* (citing *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019)). The Court agrees with Defendants.

"Equitable tolling focuses on a plaintiff's excusable ignorance and the lack of any prejudice to the defendant." *Leong v. Potter,* 347 F.3d 1117, 1123 (9th Cir. 2003) (internal citation omitted). "The doctrine of equitable tolling 'has been consistently applied to excuse a

9

claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period.'" *Id.* (quoting *Leorna v. U.S. Dep't of State,* 105 F.3d 548, 551 (9th Cir. 1997)).

Reid argues that equitable tolling applies because her attempts to investigate the suspected ongoing scheme against her were obstructed. To support her equitable tolling argument, Reid alleges that in 2003, she "independently traced harassing calls through AT&T, [and] the resulting report was forwarded to OPD without [her] consent." ECF No. 11 ¶ 22. And when she requested the report, OPD refused to release it, and this "suppression of evidence allowed the harassment to continue unchecked." *Id.* But these allegations do not explain how, or demonstrate, that Reid was or should have been unaware that the statute of limitations was running for the injuries stemming from the 2019 events. Nor do Reid's allegations regarding the suppression of the AT&T report suggest that Defendants or anyone else did anything to conceal the facts relating to her 2019 injuries or the existence of a statute of limitations. *See Hall v. Levorse,* 536 Fed. App'x 690, 691 (9th Cir. 2013) ("Contrary to Hall's contentions, neither equitable tolling nor equitable estoppel applies because Hall should have reasonably been aware of the existence of his claims within the limitations period and defendants did not wrongfully prevent Hall from asserting his claims."); *Li v. Cnty. of San Diego,* 259 Fed. App'x 912, 913 (9th Cir. 2007) ("Li's contention that the district court should have applied equitable tolling because he was not aware of the basis of his claims due to defendants' fraudulent concealment is unpersuasive, because Li failed to adequately allege any acts on the part of defendants to prevent him from detecting the facts sufficient to support bringing his claims on a timely basis."). Nor has Reid argued that any "extraordinary circumstances beyond [her] control made it impossible to file the claims on time." *Seattle Audubon Soc'y v. Robertson,* 931 F.2d 590, 595 (9th Cir. 1991) (noting that lack of access to courts caused by war supports equitable tolling); *see also Scholar v. Pac. Bell,* 963 F.2d 264, 267–68 (9th Cir. 1992) (holding that equitable tolling is applicable only in "extreme cases").

Next, the "continuing violations doctrine . . . 'allow[s] a plaintiff to seek relief for events outside the limitations period.'" *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 747 (9th Cir. 2019) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)). The doctrine "is more frequently

seen in the context of employment discrimination suits" but "also applies to § 1983 claims." *Id.* The Ninth Circuit has "recognized two applications of the continuing violations doctrine: first, to 'a series of related acts, one or more of which falls within the limitations period,' and second, to 'the maintenance of a discriminatory system both before and during [the limitations] period.'" *Id.* (alteration in original) (quoting *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 259 (9th Cir. 1997)). But the Ninth Circuit has recognized that after the Supreme Court's abrogation of the serial acts branch under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061 (2002), the Ninth Circuit has applied the abrogation to "the systematic branch of the continuing violations doctrine as well." *Id.* at 747. Thus, "little remains of the continuing violations doctrine," as "the serial acts branch is virtually non-existent," and the Ninth Circuit has "consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred." *Id.* at 748.

Here, Reid does not sufficiently allege any facts supporting ongoing harassment or violations by Defendants against her since the October 2019 "kidnapping." And her bare-bones, conclusory attempts to connect the "gang stalking" she encountered between 1998–2003 with her "kidnapping" in October 2019 do not establish any ongoing violations *after* October 2019. Accordingly, the doctrine does not apply to Reid's claims, and Reid's claims are time barred as outlined above. *See id.* at 748 (rejecting the application of the continuing violation doctrine based on the plaintiff's alleged wrongful placement on a child abuse registry because "continuing effect is insufficient to constitute a continuing violation," even if the injuries are ongoing from one past wrongful act).

### C.   Lack of Jurisdiction over Criminal Claims

"The Ninth Circuit has repeatedly held that federal criminal statutes provide no basis for civil liability." *Carrow v. Roberts*, No. ED-CV-21-1525-JGB(SHKx), 2022 WL 2102934, at *5 (C.D. Cal. Jan. 3, 2022) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). "Title 18 of the United States Code is a federal criminal statute which does not create civil liability or a private right of action." *Id.* (quoting *ManorCare of Easton PA LLC v. Nagy*, 2017 WL 4347623, at *4 (E.D. Pa. Sept. 29, 2017)).

Reid argues that her references to the Penal Code "illustrate illegality, not criminal charges." ECF No. 34 at 12. But that does not change the fact she cannot bring stand-alone causes of action based on these statutes. The Court therefore dismisses her cause of action under the Federal Kidnapping Act, 18. U.S.C. § 1201. *See, e.g., Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 190 (1994) (noting the Supreme Court has been "quite reluctant to infer a private right of action from a criminal prohibition alone" and has refused to "infer a private right of action from 'a bare criminal statute'").

Furthermore, Reid provides neither the statutory bases for several of her causes of action nor sufficient detail to provide notice to Defendants of her legal theory of liability. The Court thus finds that she has not adequately stated a claim at least as to her fifteenth cause of action for "filing and use of false police reports" and sixteenth cause of action for "allowing false 911 calls and coached false narratives." And to the extent that those causes of action are based upon violations of the California Penal Code, Reid also does not have standing to assert civil liability against defendants for those alleged violations.

## VI.     MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Reid seeks leave to amend her complaint so that it brings claims against Defendant John Jack Romero in his individual capacity in addition to his official capacity. ECF No. 36. Reid pursues this amendment "based on newly surfaced public evidence confirming his role as a final policymaker in [her] administrative kidnapping." ECF No. 36 at 1–2. The remainder of Reid's complaint would remain identical. *See id.*

City of Oakland opposes her proposed amendment on the grounds that the delay in seeking amendment is undue, the amendment prejudices City of Oakland, and the amendment does not advance justice. *See* ECF No. 40.

The Court finds that the Rule 15 factors weigh in favor of granting Reid leave to amend. The Court finds no bad faith, undue delay, prejudice, or futility associated with those proposed amendments. Moreover, any prejudice would be minimal because the Court is already granting Reid leave to amend her complaint in relation to the City of Oakland's motion to dismiss.

**CONCLUSION**

For the reasons above, the Court dismisses Reid's complaint with leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts") (citation and internal quotation marks omitted); *see also Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (leave to amend "should be granted more liberally to *pro se* plaintiffs") (citation omitted).

Within 21 days from this order, Plaintiff may file a third amended complaint solely to add John Jack Romero as a defendant in his individual capacity and to cure the deficiencies identified in this order. The Clerk is directed to terminate the motion for leave to amend at ECF No. 45 as moot.

The case management conference scheduled for August 5, 2025, is continued to November 4, 2025, at 2:00 p.m. Updated case management statements are due October 28, 2025.

**IT IS SO ORDERED.**

Dated: July 31, 2025



JON S. TIGAR
United States District Judge

13